UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Joseph A. Logiudice

                         Plaintiff,              06-CV-0481

            v.                                   **DECISION
                                                 and ORDER**
MICHAEL J. ASTRUE,[1] Commissioner
of Social Security

                         Defendant.
_____


## Introduction

Plaintiff Joseph A. Logiudice ("Plaintiff") brings this action pursuant to the Social Security Act § 216(I) and § 223, seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits.[2] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") J. Robert Brown denying his application for benefits was against the weight of substantial evidence contained in the record and was contrary to applicable legal standards.

The Commissioner moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)"), on grounds that the ALJ's

_____

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for his predecessor Commissioner JoAnne B. Barnhart as the proper defendant in this suit.

[2] This case was transferred to the undersigned by the Honorable Richard Arcara, Chief Judge, United States District Court for the Western District of New York by Order dated October 2, 2007.

decision was supported by substantial evidence.  Plaintiff opposes the Commissioner's motion, and cross-moves for judgment on the pleadings, on grounds that the Commissioner's decision was erroneous.  For the reasons set forth below, I hereby deny the Commissioner's motion for judgment on the pleadings, grant Plaintiff's motion for judgment on the pleadings, and remand this claim to the Commissioner for further proceedings consistent with this decision.

## Background

On July 21, 2003, Plaintiff, who was then 50 years old, filed an application for Disability Insurance Benefits under Title II, § 216(I) and § 223 of the Social Security Act ("the Act") claiming a disability since September 15, 2000, due to depression, neurological problems, asthma, and emphysema.  Plaintiff's application was denied by the Social Security Administration initially on December 5, 2003.  Plaintiff filed a  timely request for hearing on January 2, 2004.

Thereafter, Plaintiff appeared *pro se* at an administrative hearing before the ALJ on March 22, 2005.  In a decision dated April 14, 2005, the ALJ determined that the Plaintiff was not disabled.  The ALJ's decision became the final decision of the Commissioner when the Social Security Appeals Council denied Plaintiff's request for review on July 13, 2006.  On  July 20, 2006, Plaintiff filed this action.

**Discussion**

**I.   Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Social Security benefits. Mathews v. Eldridge, 424 U.S. 319, 320 (1976). Additionally, the section directs that when considering such a claim, the Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. Substantial evidence is defined as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) thus limits the Court's scope of review to determining whether or not the Commissioner's findings were supported by substantial evidence. See Monqeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (finding that a reviewing Court does not try a benefits case de novo). The Court is also authorized to review the legal standards employed by the Commissioner in evaluating Plaintiff's claim.

The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). The Commissioner asserts that his decision was reasonable and is supported by the evidence in the record, and moves for

judgment on the pleadings pursuant to Rule 12(c). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2d Cir. 1988). If, after a review of the pleadings, the Court is convinced that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief, judgment on the pleadings may be appropriate. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## II.  **The ALJ properly applied the appropriate legal standards in his findings**

The ALJ in his decision found that Plaintiff was not disabled within the meaning of the Social Security Act.  In doing so, the ALJ adhered to the Social Security Administration's five-step sequential evaluation analysis for evaluating applications for disability benefits. See 20 C.F.R. § 404.1520.[3] Under step one of the process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. (Transcript of Administrative Proceedings at page 24) (hereinafter "Tr.").  At Steps 2 and 3, the ALJ concluded that Plaintiff's

---

[3] Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

impairments, such as depression, neurological problems, and asthma[4] were severe within the meaning of the Regulations but were not severe enough to meet or equal, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4 (Tr. at 24).

Further, at Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity to perform a range of light work involving lifting and carrying of 20 pounds occasionally and 10 pounds frequently. (Tr. at 22, 24). Moreover, the ALJ found that Plaintiff has significant non-exertional limitations, which limit him to occasional climbing, balancing, stooping, kneeling, crouching or crawling. (Tr. at 24). In addition, the ALJ found that Plaintiff should avoid concentrated exposure to extreme cold, extreme heat, humidity, and avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation, heights and machinery. (Tr. at 22, 24). The ALJ also found that Plaintiff retains the ability to understand simple directions and instructions and perform simple rote tasks. (Tr. at 22, 24). The ALJ concluded that Plaintiff is unable to perform his past work as a fork-lift operator (classified as medium to heavy exertion, semi-skilled work) or as an assistant manager in a warehouse (classified as semi-skilled work, performed at the medium exertion level) due to his limited exertional

---

[4]The ALJ's "findings" include emphysema as "severe." (Tr. at 24). However, in his discussion, the ALJ finds that "the claimant's emphysema is a non-severe impairment and does not impose any significant work related limitations." (Tr. at 19).

abilities and  his non-exertional limitations. (Tr. at 22, 91).

Finally, at Step 5, the ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), jobs in sufficient numbers exist in the regional and national economies which Plaintiff can perform. (Tr. at 25). Specifically, the ALJ found that Plaintiff can perform the  job duties of a cashier, file clerk, order clerk, and a dispatcher. (Tr. at 25).  In doing so, he relied upon the testimony of the Vocational Expert posing an incomplete hypothetical upon which the VE offered his opinion.

## III. <u>The ALJ's determination that Plaintiff is capable of performing the jobs of cashier, file clerk, order clerk, and dispatcher is not supported by the evidence.</u>

Based on the vocational expert's ("VE") testimony, the ALJ concluded that Plaintiff is capable of making a successful adjustment to work that exists in significant numbers in the national economy. (Tr. at 24). However, the hypothetical questions presented to the VE omitted plaintiff's significant non-exertional limitations.  Vocational testimony based on hypothetical questions that fail to "relate with precision to the physical and mental impairments of the claimant is not substantial evidence on which an ALJ may base a decision." <u>Bradley v. Bowen</u>, 800 F.2d 760, 763 (8th Cir. 1986); <u>Mathews v. Barnhart</u>, 220 F.Supp. 2d 171, 175 (W.D.N.Y. 2002).

Specifically,  the  ALJ  found  that  Plaintiff  "retains  the

ability to understand simple directions and instructions and perform simple rote tasks." (Tr. at 24). In addition, the ALJ found "the claimant has significant non-exertional limitations, which limit[...] him to occasional climbing[,] balancing, stooping, kneeling, crouching or crawling."(Tr. at 24). The ALJ went on to find that "the claimant should avoid concentrated exposure to extreme cold, extreme heat, humidity and avoid even moderate exposure to fumes, odors, dusts, gases, poor ventilation. . . ." (Tr. at 24).

In posing the hypothetical question, the ALJ asked, "Now, if we had a hypothetical Claimant the same age, education, and work background as Mr. Logiudice, and if his physical condition were to allow him to lift 10 pounds frequently and 20 pounds occasionally, what light type jobs would you suggest for such a person?" (Tr. at 353). The VE suggested work as a cashier, file clerk, order clerk or dispatcher. The ALJ next addressed the impact of a history of seizures when performing the work suggested by the VE. The VE stated that he considered the potential of future seizure activity "when selecting those jobs to keep away from moving equipment, heavy machinery, safety hazard kinds of considerations." (Tr. at 355).

The ALJ went on to add "some problems with either depression or panic attacks and it produces restrictions of activities of daily living, mild, and difficulties maintaining social

functioning, mild, and difficulties in maintaining concentration, persistence, or pace, moderate, what impact – further impact would that have on your testimony?" (Tr. at 355).  The VE stated that "those ratings at those levels would not preclude the work which I have referred to in the first hypothetical." (Tr. at 355).

The VE, in response to the ALJ's questioning, suggested that he was familiar with the exhibits of the case and the type of work the claimant could perform (Tr. at 353).[5] However, a hypothetical question which assumes the VE's familiarity with the record is fatally defective. See Gilliam v. Calfano, 620 F.2d 691, 694 (8th Cir. 1980). Further, "[t]he ALJ must pose hypothetical questions to the vocational expert which reflect the full extent of the claimant's capabilities and impairments to provide a sound basis for the [expert]'s testimony." See Sanchez v. Barnhart, 329 F.Supp.2d 445, 449-50 (S.D.N.Y.2004) (citing De Leon v. Sec'y of Human Servs., 734 F.2d 930, 936 (2d Cir.1984); Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir.1981)). "The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." See id., 649 F.2d at 114 (2d Cir.1981).

---

[5]The following exchange occurred between the ALJ and the VE:

Q:     "How would you classify the type [of] work Mr. Logiudice has done in the past?

A:     As a forklift operator, warehouse worker, the work is generally considered or defined in the Dictionary of Occupational Titles as borderline work. From a skill standpoint, it's medium exertionally. My experience with his work, however, and the exhibits themselves indicate that the work ... considered heavy work as it was performed. With regard to the warehouse supervisor, assistant manager, higher level semiskilled and light work.

See Tr. at 353.

In addition, in appearing at the hearing *pro se*, Plaintiff did not have the assistance of counsel to ensure that the hypothetical questions presented a complete picture of his non-exertional limitations to the VE. Since the Plaintiff appears *pro se,* the court is sympathetic to the plight of the unrepresented in matters concerning their disability claims particularly when their medical history impacts the determination whether it affects his ability to perform jobs in the national economy.   See   Mount v. Book-of-the-Month Club, Inc., 555 F.2d 1108, 1112 (2d Cir.1977) ("A layman representing himself ... is entitled to a certain liberality with respect to procedural requirements"); Stewart v. United States Postal Service, 649 F.Supp. 1531, 1535 (S.D.N.Y.1986) ("the law downplays the strict application of harsh procedural rules when a party is *pro se* "). Accordingly, the presumption should run in favor of the unrepresented plaintiff.

Here, the record reveals that the hypothetical questions posed to the VE by the ALJ did not include any of the claimant's numerous limitations relating to his pulmonary problem or his postural limitations. The ALJ found that plaintiff was unable to do anything more than occasional stooping, that he must avoid even moderate exposure to fumes, odors, dust, gases, poor ventilation or heights and machinery.  (Tr. 22). But the hypothetical questions did not include claimant's mental limitations "with precision" and did not

Case 1:06-cv-00481-MAT-LGF   Document 10   Filed 01/18/08   Page 10 of 11

include his postural and pulmonary limitations[6] as required by applicable case law.  See Bradley v. Bowen, 800 F.2d 760, 763 (8th Cir. 1986); Mathews v. Barnhart, 220 F. Supp. 2d 171, 175 (W.D.N.Y. 2002).  The question is left open whether consideration of these factors by the VE would have altered his opinion.

As the VE was not able to consider all of Plaintiff's significant non-exertional limitations before making his determination, I find that the VE's testimony that Plaintiff could perform jobs of cashier, file clerk, order clerk, or dispatcher is not reliable evidence on which an ALJ could make a finding that the plaintiff was not disabled because all of plaintiff's limitations were not placed before the VE by the ALJ in making his determination.  Thus, substantial evidence does not exist in the record to support the ALJ's conclusion of non-disability.

---

[6]The following exchange occurred solely between the ALJ and the VE:

Q:      Now, if we had a hypothetical Claimant the same age, education, and work background as Mr. Logiudice, and if his physical condition were to allow him to lift 10 pounds frequently and 20 pounds occasionally, what light type jobs would you suggest for such a person?

A:      Well, first I think it's important to point out that a person with a history of seizures, even though they're coming under control, should stay away from heavy equipment and machines[.] Work as a cashier, there are approximately 10,000 locally and 500,000 nationally. Work as a file clerk, 940 locally and 249,000 nationally. Work as a dispatcher, 600 locally, 30,000 nationally. With the exception of the file clerk, which won't require any more lifting but might require more standing, the rest of these jobs can be done primarily from a sitting position or a sitting and standing alternating position.

. . .

Q:      ... So, in effect, Mr. Logiudice has only had two sets of seizures. What impact does that have on the testimony that he's just given?

A:      Your honor, I'm not a Medical Expert so it's hard for me to speak to this from a medical standpoint. From a vocational standpoint, I tried to take the seizure activity of potential future seizure activity into consideration when selecting those jobs to keep away from moving equipment, heavy machinery, safety hazard kinds of considerations. With regard to the future frequency, it's certainly not possible for me to say.

See Tr. at 354 - 355.

## **Conclusion**

For the reasons set forth above, I grant Plaintiff's motion for judgment on the pleadings insofar as the case is remanded to the Commissioner for an <u>expedited</u> hearing for the purpose of properly considering Plaintiff's non-exertional impairments in determining whether Plaintiff can perform other work.  Defendant's motion for judgment on the pleadings is denied.

**ALL OF THE ABOVE IS SO ORDERED.**

  s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          January 18, 2008